INHAB'TS OF CORNVILLE *versus* INHAB'TS OF BRIGHTON.

A manuscript book cannot be received as evidence to decide in a conflict of testimony between witnesses respecting the date of an occurrence, if none of the entries on the book were made by either of the witnesses.

ON EXCEPTIONS from *Nisi Prius*, TENNEY, J., presiding.

ASSUMPSIT, for supplies furnished for one Berry and his wife and children. Berry had a derivative settlement in Brighton. The defence was that, after having become twenty-one years of age, he acquired a settlement by five years continuous residence in Cornville. Upon this question, witnesses were examined on both sides, and there was a conflict in their testimony. For the sole purpose of fixing dates in relation to Berry's residence, the plaintiffs offered a book of accounts kept by one Barker. It was objected to by the defendants, but was admitted and used as evidence. To its admission the defendants excepted.

The specific facts, necessary to a full exhibition of the legal principles involved, are presented in the opinion of the Court.

*Hutchinson*, for the defendants.

*Leavitt*, for the plaintiffs.

SHEPLEY, C. J. — It became a material question at the trial, whether Benjamin N. Berry had gained a settlement in the town of Cornville by a residence of five successive years. Witnesses had been introduced in defence, who had testified, that they saw Berry at work at Joseph Barker's in Cornville in 1831, and at various other times during the following years till the fall of 1836. "The plaintiffs introduced evidence tending to show, that Berry went to said Barker's to live in 1832 and not in 1831, and consequently did not reside there five years, as it was agreed by both parties, that he left said Barker's in the fall of .1836." Berry had testified "that he lived at said Barker's from the March after he was twenty-one the previous February six or seven years." Joseph More had testified, that he worked for Barker four months in the first part of the season of 1830, and part of the spring and sum-

mer of 1831 and that he did not recollect seeing Berry there. Joseph Barker had testified, that he was unable to tell, what year Berry commenced to work for him, that the first time he could be sure of his working for him was in the spring of 1832.

Under these circumstances the "plaintiffs offered the account book of Joseph Barker, upon which were sundry charges against the aforesaid James More; and also charges against the said Berry commencing in 1834 and continuing along at irregular intervals to 1837. Also upon said book were certain memoranda made by said Barker at irregular intervals. This book was offered by the plaintiffs to fix dates in reference to Berry's residence at Barker's. The defendants objected to the introduction of said book. The Court overruled the objection and admitted the book for the purpose, for which it was offered, exclusively." The book is referred to as part of the bill of exceptions.

It does not appear to have been admitted to fix the date of any particular occurrence. Upon examination it is not found to contain any memorandum or charge fixing the time or the year when Berry first commenced to work for Barker, which appears to have been the question in controversy, respecting which dates were important. No memorandum or charge respecting Berry is found earlier than May, 1834, and yet Barker and other witnesses for the plaintiffs had testified, that Berry worked for Barker in 1832. The book therefore had no direct tendency to fix the date, when Berry first commenced to work for Barker, or to fix any other important date except the time, when More worked for Barker. It does contain charges against More during the years 1830, 1831, 1833 and 1835, and it might have an effect with the jury to corroborate the testimony of More and impair that of Berry. A book of accounts cannot be legal testimony to decide in a conflict of testimony between witnesses, respecting the date of an occurrence, when neither of the witnesses made any entry upon the book. No case has been referred to or no-

ticed, which would authorize the admission of the book under the circumstances, in which it was admitted in this case.

*Exceptions sustained, verdict set*
*aside, and new trial granted.*

WELLS, HOWARD, RICE and HATHAWAY, J. J., concurred.